# Schnader

### ATTORNEYS AT LAW

1935 ——— 75 YEARS ——— 2010

ONE MONTGOMERY STREET   SUITE 2200
SAN FRANCISCO, CA 94104-5501
415.364.6700   FAX 415.364.6785   schnader.com

April 9, 2012

Kevin W. Coleman
Direct Dial 415-364-6714
Direct Fax 415-364-6785
E-mail: kcoleman@schnader.com

## VIA FEDERAL EXPRESS

Hon. Lawrence K. Karlton
United States District Court
Eastern District of California
501 I Street, Suite 4-200
Sacramento, CA 95814

> Re:   *In re SK Foods, L.P.;* **Bankruptcy Court Case No. 09-29162-D-11**
> **U.S. District Court Case Nos. 2:11-CV-01839-LKK; 2:11-CV-01840-**
> **LKK and 2:11-cv-01842-LKK**

Dear Judge Karlton:

On behalf of our client, Bradley D. Sharp, the Chapter 11 Trustee for SK Foods LP and appellant in the above-referenced appeals, I write in response to the Court's March 26, 2012 order.

We have reviewed Appellees' April 2, 2012 letter to your honor, and do not dispute that Scott Salyer has a right under his plea agreement to withdraw his guilty plea, and therefore, a theoretical possibility exists that testimony by Mr. Salyer pending the acceptance of his plea agreement could *potentially* implicate his Fifth Amendment rights.

The Trustee must, however, advise the Court that within the last few days, Salyer and the Salyer entities (several of whom are parties to these appeals) have taken actions directly contrary to the position set forth in Appellees' April 2, 2012 letter. There is litigation pending in the Federal Court of Australia in which Appellees SK PM Corp. and the Scott Salyer Revocable Trust are challenging the Trustee's claim to be the owner of stock in an Australian affiliate estimated to be worth approximately $32 million. In the Australian proceedings, the Trustee contends that the stock belonged to SK Foods when its bankruptcy case was filed. Salyer and his entities claim that SK Foods transferred these assets to non-debtor affiliates controlled by Salyer prior to the bankruptcy. A copy of the Trustee's originating application and supporting affidavit of Bradley D. Sharp (without exhibits, which are voluminous) are enclosed.

I am advised by our co-counsel in Australia that at a hearing in Sydney on April 4, 2012, *the Salyer parties* asked the Australian Federal Court to set a trial date in July 2012. More importantly, the *Salyer parties* (not the Trustee) asked that the Court appoint the Hon. Peter Heerey QC to conduct the examination of Scott Salyer in San Francisco, California.

Hon. Lawrence K. Karlton
April 9, 2012
Page 2


Salyer, therefore, cannot have any actual concern about implicating his Fifth Amendment rights because he is offering to make himself available as a witness in the Australian proceedings before his plea agreement is finalized.

A copy of the draft proposed order circulated by Salyer's Australian counsel in advance of the April 4 hearing is also enclosed. Although I am advised that the Australian Federal Court declined to set a trial date or appoint Mr. Heerey to examine Mr. Salyer as requested, the Trustee respectfully submits that these actions are relevant to the Court's assessment of the extent to which Mr. Salyer's Fifth Amendment rights are actually implicated if he required to testify in any of these proceedings prior to acceptance of his plea agreement.

Thank you for your time and consideration in this matter.

Sincerely,

Kevin W. Coleman

KWC/mp
Enclosures

**Originating Process**

NSD  2 6 2 / 2012

No.                              of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List

**In the matter of SK Foods Australia Pty Ltd A.C.N 009 245 735 (in liquidation)**

SK Foods LP, a California limited partnership (Under Chapter 11)
**First Plaintiff**

Bradley D. Sharp,
as trustee in bankruptcy of
SK Foods L.P (Under Chapter 11)
**Second Plaintiff**



FEDERAL COURT OF AUSTRALIA
N.S.W. DISTRICT REGISTRY
**FILED / RECEIVED**
**2 0 FEB 2012**
Ⓜ
Fee paid 0

SK Foods Australia Pty Ltd (in liquidation)
A.C.N 009 245 735
**First Defendant**
**And eight others named in the Schedule**

## A. DETAILS OF APPLICATION

This application is made pursuant to sections 511 and 504 of the *Corporations Act* and pursuant to the Court's accrued jurisdiction.

*Nature of Proceeding*

1.   The fourth defendants ("**liquidators**") are the liquidators of the first defendant ("**SKFA**"), second defendant ("**CJV**") and third defendant ("**SS Farms**").

| | |
|---|---|
| Filed on behalf of (name & role of party) | Plaintiffs |
| Prepared by (name of person/lawyer) | George Lucarelli & Jill Milburn |
| Law firm (if applicable)   Duncan Cotterill | |
| Tel   (02) 8267 3800 | Fax   (02) 8267 3888 |
| Email   j.milburn@duncancotterill.com | |
| **Address for service** (include state and postcode) | Level 18, 39 Martin Place, Sydney NSW 2000 |

[Form approved 01/08/2011]

2.    SKFA owns all of the shares issued by CJV.

3.    The tenth defendant ("**SS Farms LLC**") owns all the shares issued by SS Farms.

4.    The liquidators of SKFA hold or will in due course hold approximately $30,000,000 in surplus funds, which is ultimately to be distributed to SKFA's shareholders.

5.    SKFA has allotted 101 fully paid ordinary shares. The sixth defendant ("**Salyer**") is the legal owner of 1 fully paid ordinary share in SKFA.

6.    There is a dispute concerning the legal and beneficial ownership of the other 100 fully paid ordinary SKFA shares.

*Ownership of 100 SKFA shares*

7.    The first plaintiff ("**SK Foods**") claims to be the legal and beneficial owner of the other 100 SKFA shares. (The second plaintiff is the Chapter XI trustee-in-bankruptcy of SK Foods).

8.    The fifth defendant ("**SKPM**") claims to be the legal owner of 55.45 of the 100 SKFA shares. Salyer as trustee of the Scott Salyer Revocable Trust ("**SSR Trust**") claims to be the legal owner of the remaining 44.55 of the 100 SKFA shares.

9.    Each of SK Foods, SKPM and Salyer have lodged proofs of debt with the liquidators claiming to be the owner of those SKFA shares set out above.

10.    SKPM and SSR Trust have purportedly transferred the 100 SKFA shares to the seventh defendant ("**Monterey**") which, in turn, has purportedly transferred those 100 SKFA shares to the eighth defendant ("**Fast Falcon**").

11.    The liquidators have to date and unless restrained will continue to incur substantial costs and expenses investigating issues concerning who owns the 100 SKFA shares. It is unclear what power or obligation the liquidators have to make any determination or ruling on the issue of who owns the disputed 100 SKFA's shares. Section 501 of the *Corporations Act* does not in terms bestow upon the liquidators either a power or an obligation to make any determination or ruling as to the competing shareholder claims; it merely commands the liquidators to distribute any surplus among shareholders "*according to their rights and interests in the company*". When the "*rights and interests*" of parties claiming to be shareholders is in dispute, the issue ought to be presented to the Court for binding determination. Section 511 of the *Corporations Act* is the means by which that is done.

12.    The liquidators' ultimate decision concerning the legal and beneficial ownership of the 100 SKFA shares will, in any event, almost certainly be the subject of an appeal by the aggrieved parties.

13.    By this application SK Foods puts before the Court for binding determination the issue of who is the legal and beneficial owner of the 100 SKFA shares, pursuant to section 511 of the *Corporations Act* and pursuant to the Court's accrued jurisdiction to make binding declarations as to the legal and beneficial ownership of the 100 SKFA shares.

14. The fifth, sixth, seventh, eighth and ninth defendants are all proper parties as they have asserted or might assert to be the legal or beneficial owners of the 100 SKFA shares.

*Proper allocation of proceeds of sale as between SKFA/CJV and SS Farms*

15. In their capacity as liquidators of SS Farms, the liquidators hold or stand to receive from the receivers of SS Farms, approximately $18.2m.

16. In due course, the liquidators of SS Farms will distribute a substantial surplus to SS Farm's shareholder, being SS Farms LLC.

17. SK Foods claims that most of those surplus funds held by the liquidators of SS Farms are, in truth, proceeds of sale of CJV and SKFA's assets and, as such, form part of the assets of CJV/SKFA.

18. By this application SK Foods puts before the Court for determination the issue of whether and to what extent the surplus funds in the liquidation of SS Farms are in truth funds which should be part of the liquidation of CJV/SKFA.

19. SS Farms LLC, as the sole shareholder of SS Farms, is a proper party as it is affected by such orders or declarations the Court may make concerning the issue of whether and to what extent the surplus funds in the liquidation of SS Farms are in truth funds which should be part of the liquidation of CJV/SKFA.

*Directions as to Liquidators future conduct of the liquidations*

20. The liquidators have to date and unless restrained will continue to charge prodigious amounts in remuneration, costs and expenses investigating various matters which SK Foods says ought not be further investigated by the liquidators, or at least not without prior approval of creditors or the Court.

21. The liquidators' remuneration (not including expenses and legal fees) are currently about $150,000 per month.  As at 31 January 2012 the liquidators have charged $2.57m in remuneration, have paid legal fees of over $1.6m and billed travel expenses of almost $200,000.  Both liquidators are charging $700 per hour, plus GST.   These amounts are in addition to remuneration of over $400,000 paid to the liquidators previously, in their capacity as voluntary administrators of SKFA/CJV.

22. By this application SK Foods puts before the Court for determination whether, given the substantial surplus already available to SKFA shareholders, the issues presented for judicial determination in these and other pending proceedings and the fees and charges visited upon the administration to date, the liquidators are justified in incurring any further expenses in continuing various investigations and enquiries.

23. In addition, SK Foods seeks a review of the liquidators' remuneration to date, pursuant to section 504 of the *Corporations Act.*

**Details of claim**

On the facts stated in the supporting affidavit the Plaintiffs claim:

*Determination of the shareholders of SK Foods Australia Pty Ltd (in liquidation)*

1.  A declaration that the first plaintiff is the legal and beneficial owner of 100 fully paid ordinary shares issued by the first defendant.

2.  A declaration that the sixth defendant is the legal owner of 1 fully paid ordinary share issued by the first defendant.

3.  An order that the fourth defendants admit in full the first plaintiff's proof of debt dated 9 December 2011 lodged in the liquidation of the first defendant.

4.  In the alternative, pursuant to s511 of the *Corporations Act* orders, declarations and such other relief as may be required determining which of the following proofs of debt lodged in the liquidation of the first defendant is admissible to proof and consequential orders or directions requiring the fourth defendants to admit such proof of debt:

    a.  the proof of debt lodged by the first plaintiff dated 9 December 2011 claiming to be the legal and beneficial owner of 100 fully paid ordinary shares issued by the first defendant;

    b.  the fifth defendant's proof of debt dated 12 December 2011 claiming to be the legal and beneficial owner of 54.55 fully paid ordinary shares issued by the first defendant; or

    c.  the sixth defendant's proof of debt dated 12 December 2011 claiming to be the owner of 44.55 fully paid ordinary shares issued by the first defendant.

5.    A declaration that the seventh defendant is not the legal or beneficial owner of any share issued by the first defendant.

6.    A declaration that the eighth defendant is not the legal or beneficial owner of any share issued by the first defendant.

7.    In the further alternative, pursuant to sections 485(2), 501 and 511 of the *Corporations Act* orders, declarations and such other relief as may be required for the adjustment of the rights of the contributories of the first defendant amongst themselves and for payment of the surplus to the persons entitled to it.

*Determination of the surplus funds available to contributories of ASK Foods Australia Pty Ltd (in liquidation)*

8.    A declaration that the funds or part of the funds held by the fourth defendants as liquidators of the third defendant are subject to a constructive trust in favour of, and form part of the distributable assets of, the first and second defendants.

9.    In the alternative, a declaration that the funds or part of the funds held by the fourth defendants as liquidators of the third defendant are subject to a resulting trust in favour of, and form part of the distributable assets of, the first and second defendants.

10. An order that the fourth defendants transfer such funds held by the fourth defendants as liquidators of the third defendant that are declared to be subject to a constructive or resulting trust in favour of the first and second defendant, to a bank account operated by them as liquidators of the first defendant.

11. In the alternative, pursuant to s511 of the *Corporations Act* orders, declarations and such other relief as may be required determining what proportion of the funds held by the fourth defendants as liquidators of the third defendant represent the proceeds of sale of assets previously owned by the first and second defendants.

12. Consequential orders and relief so as to adjust the funds held by the fourth defendants as liquidators of the first, second and third defendants so as to properly reflect the value of the assets sold by the first, second and third defendants to Kagome Co. Ltd.

*Liquidation to be finalized*

13. Pursuant to s511 of the *Corporations Act* orders, declarations and such other relief as may be required determining whether the fourth defendants are justified (and if so, subject to such conditions as the Court may impose) in incurring any further costs and expenses in investigating any of the following matters:

    a. the legal and beneficial owners of the shares issued by the first defendant;

b. the owner of the Inter-Company Debt the subject of proceedings 2280 of 2011 in this Honourable Court;

c. the existence or prospects of any cause of action against ANZ National Ltd or against any receiver and manager appointed by it to the first defendant; or

d. the existence of any other cause of action against any other third party.

*Review of Liquidators remuneration*

14. Pursuant to section 504 of the *Corporations Act*, a review of the amount of remuneration received by the fourth defendants as liquidators of the first, second and third defendants.

*Other or further Orders and relief as may be required*

15. To the extent requires, leave pursuant to section 5[...]2[...] of the *Corporations Act*.

16. Costs, including costs on a common fund basis.

17. Such further or other relief as the case requires.

**Claim for interlocutory relief**

The Plaintiffs also claims interlocutory relief.

1.    An order that:

    a.  subject to subparagraph (b), pending further order the fourth
        defendants by themselves their servants and agents be restrained from
        incurring any further costs and expenses in investigating any of the
        following matters:

          i.  the legal and beneficial owners of the shares issued by the first
             defendant;

          ii.  the owner of the Inter-Company Debt the subject of
             proceedings 2280 of 2011 in this Honourable Court;

         iii.  the existence or prospects of any cause of action against ANZ
             National Ltd or against any receiver and manager appointed by
             it to the first Defendant; or

         iv.  the existence of any other cause of action against any other
             third party;

    b.  however nothing in this Order shall prevent the fourth defendants
        from incurring any costs or expenses in connection with the proper
        conduct of:

          i.  these proceedings;

    ii.  proceedings 2280 of 2011 in this Honourable Court; or

    iii.  proceedings 2334 of 2011 in this Honourable Court.

2.    The Plaintiffs have leave pursuant to Rule 10.43(2) to serve this Originating Process on the fifth, sixth, seventh, eighth and ninth defendants in a foreign country.

3.    In the alternative, an order confirming service of this Originating Process on the fifth sixth, seventh, eighth and ninth defendants in a foreign country, pursuant to Rule 10.43(6).

4.    If required, orders and directions for substituted service pursuant to Rule 10.48.

Date:    20 February 2012

.............................. *Jill nile*

*Signature of the plaintiffs' legal practitioner*

This application will be heard by ........................

At:

Level 17,
Federal Court of Australia,
Law Courts Building,
Queens Square,
Sydney, New South Wales

an officer acting with the
authority of the District Registrar

2 0 FEB 2012

at 9.30 (*am)*pm on Friday 23 March 2012 2012.

## B. NOTICE TO DEFENDANTS

**To:**

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735
**First Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010
**Second Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716
**Third Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

John Sheahan and Ian Russell Lock as joint and several liquidators of
SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735
Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010
SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716
**Fourth Defendants**
C/- Sheahan Lock Partners, Accountants
Level 8, 26 Flinders Street, Adelaide South Australia

SK PM Corporation, a California corporation
**Fifth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Frederick Scott Salyer (aka Scott Salyer) a California resident,
as trustee of the Scott Salyer Revocable Trust
**Sixth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Monterey Peninsula Farming LLC, a California Corporation
**Seventh Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Fast Falcon LLC, a company organised under the laws of Nevis, West Indies
**Eighth Defendant**
c/- Collins & Associates, 3450, 21st Street, San Francisco, California 94110
United States of America

 SS Farms LLC
a California Corporation
**Ninth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

If you or your legal practitioner do not appear before the Court at that time, the
application may be dealt with, and an order made, in your absence.

Before appearing before the Court, you must, except if you have already done so or
you are the plaintiff in this proceeding, file a notice of appearance, in the
prescribed form, in the Registry and serve a copy of it on the plaintiff in the
originating process.

*Note* Unless the Court otherwise orders, a respondent that is a corporation must be
represented at a hearing by a legal practitioner.  It may be represented at a hearing
by a director of the Corporation only if the Court grants leave.

# C. FILING

Date of filing: ......................................
This Originating Process is filed by DuncanCotterill, Solicitors for the Plaintiffs.

# E. SERVICE

The Plaintiffs address for service is DuncanCotterill, Solicitors, Level 18, 39
Martin Place, Sydney NSW 2000 (Tel: (02) 8267 3800; Fax: (02) 8267 3888). DX
753 Sydney

It is intended to serve a copy of this Originating Process on the defendants.

## Schedule

No.            of 2012

Federal Court of Australia
District Registry: New South Wales
Division: Corporations List

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735
**First Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010
**Second Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716
**Third Defendant**
C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,
Adelaide South Australia

John Sheahan and Ian Russell Lock as joint and several liquidators of
SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735
Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010
SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716
**Fourth Defendants**
C/- Sheahan Lock Partners, Accountants
Level 8, 26 Flinders Street, Adelaide South Australia

SK PM Corporation, a California corporation
**Fifth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Frederick Scott Salyer (aka Scott Salyer) a California resident,
as trustee of the Scott Salyer Revocable Trust
**Sixth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Monterey Peninsula Farming LLC, a California Corporation
**Seventh Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America

Fast Falcon LLC, a company organised under the laws of Nevis, West Indies
**Eighth Defendant**
c/- Collins & Associates, 3450, 21st Street, San Francisco, California 94110
United States of America

**SS Farms LLC**
a California Corporation
**Ninth Defendant**
c/- Farella Braun & Martel LLP
Suite 1700, 235 Montgomery Street, San Francisco California 94104
United States of America



NSD  2 6 2 / 2012

Form 59

Rule 29.02(1)

**Affidavit**

No. NSD    of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List


FEDERAL COURT OF AUSTRALIA
N.S.W. DISTRICT REGISTRY
**FILED / RECEIVED**

2 0 FEB 2012

Ⓜ
Fee paid $

SK Foods, L.P, a California limited partnership (Under Chapter 11)

**First Plaintiff**

Bradley D. Sharp, as trustee in bankruptcy of SK Foods, L.P (Under Chapter 11)

**Second Plaintiff**

SK Foods Australia Pty Ltd (in liquidation)

A.C.N 009 245 735

**First Defendant**

**And nine others named in the Schedule**

| | |
|---|---|
| Affidavit of: | Bradley D. Sharp |
| Address: | 333 South Grand Ave, Suite 4070, Los Angeles, CA 90071-1544 |
| Occupation: | Trustee |
| Date: | 17 February 2012 |



| | |
|---|---|
| Filed on behalf of (name & role of party) | First and Second Plaintiffs |
| Prepared by (name of person/lawyer) | Jill Milburn, Partner |
| Law firm (if applicable) | Duncan Cotterill |
| Tel   (02) 8267 3800 | Fax   (02) 8267 3808 |
| Email   j.milburn@duncancotterill.com | |
| Address for service (include state and postcode) | Level 18, 39 Martin Place Sydney NSW 2000 |

[Form approved 01/08/2011]

- 2 -

Contents

| Document number | Details | Paragraph | Page |
|---|---|---|---|
| 1 | Affidavit of Bradley D Sharp affirmed on           February 2012 | | 1 |
| 2 | Exhibit "BS-1" | 1 | 2 |

I Bradley D. Sharp affirm:

1.   Exhibited to me at the time of affirming this Affidavit and marked "**BS-1**" is 2 paginated folders of documents to which I make reference in this Affidavit.  Where I refer to a **page or tab number**, I refer to the page or tab number in the Exhibit.

2.   I am a Senior Vice President of Development Specialist Inc ("***DSI***"), which provides, amongst other services, insolvency and restructuring services.  At **tab 1** is a print out of DSI's web-site home page and a print out of my details as available on DSI's web-page.  I say the contents of both documents are true and correct.

3.   I specialize in insolvency and restructuring services.

4.   I have given expert evidence before United States Courts and the High Court of Justice, Queens Bench Division, London.  I am aware that under Australian Law it is a criminal offence to give knowingly false evidence.

5.   I believe the contents of my affidavit are true.

6.   I was appointed as the Trustee in Bankruptcy of SK Foods, L.P. on 14 May 2009, which appointment was approved on 18 May 2009 by the United States Bankruptcy Court.  A copy of this Order is at **tab 2**. I am also the Chapter 11 Trustee in bankruptcy for RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a (doing business as) Colusa Country Canning Co.

7.   I have undertaken what I believe to be an extensive and exhaustive analysis of the business records of SK Foods and RHM Industrial/Specialty Foods, Inc.



- 3 -

8.  Unless otherwise stated, the source of my knowledge of the matters deposed below is information gathered during my ongoing investigation into the assets, liabilities and financial affairs of SK Foods and/or my actual participation in the events set out. This ongoing investigation includes investigation undertaken by my associates, former employees of SK Foods, and counsel acting under my direction.

9.  I am advised by my Australian solicitor Jill Milburn and believe that in due course I will be given the opportunity to supplement this affidavit with further affidavits and documentary material. Accordingly, in this affidavit I set out in summary form the facts and events which give rise to these proceedings.

10. For convenience I arrange my affidavit into the following chapters:

   a.  *Chapter I: Abbreviations and dramatis personae;*

   b.  *Chapter II: Overview;*

   c.  *Chapter III: Historical background to my appointment*

   d.  *Chapter IV: Purported dealings with SKFA's shares and Inter-Company receivable*

   e.  *Chapter V: Australian Liquidators investigations and enquiries*

   f.  *Chapter VI: Australian Liquidators remuneration and fees*

   g.  *Chapter VII: Sale of Cedenco Group to Kagome Co. Ltd and allocation of proceeds of sale*

**Chapter I: Abbreviations and Dramatis Personae**

11. In this affidavit I make reference to the following abbreviations:

   a.  Cedenco Foods Ltd later Ex Ced Foods Ltd, a New Zealand company ("**Ex Ced Foods**");

   b.  Cedenco Group ("**Cedenco Group**") collectively SKFA, CJV, SS Farms, SKFI, Ex Ced Foods and Ohakune;

   c.  Cedenco JV Australia Pty Ltd, an Australian company ("**CJV**");

   d.  Fast Falcon LLC ("**Fast Falcon**") is an entity incorporated in Nevis, West Indies whose registered agent- Morning Star Holdings Limited- is a company located in Nevis, West Indies; controlled by or at the direction of Salyer;



- 4 -

e.  Monterey Peninsula Farming LLL, a California corporation controlled by Salyer ("Monterey");

f.  Moss Adams LLP, A United States Certified Public Accounting firm and then auditors of SK Foods LP ("Moss Adams");

g.  Mountain Carrots New Zealand Ltd later Cedenco Ohakune Ltd, a New Zealand company ("Ohakune");

h.  *Racketeer Influenced and Corrupt Organizations Act* ("RICO Act") is a United States Federal law that provides for substantial criminal penalties and a civil cause of action for acts performed as part of an ongoing criminal organization;

i.  RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa Canning Co. (under Chapter 11 along with SK Foods, LP)("RHM"). I am also the Trustee of RHM;

j.  SK Foods Australia Pty Ltd, an Australian company ("SKFA");

k.  SK Foods International Ltd, a New Zealand Company ("SKFI");

l.  SK Foods, L.P., a California limited partnership (under Chapter 11) ("SK Foods,");

m.  SK PM Corporation, a California corporation, controlled by or at the direction of Salyer ("SKPM");

n.  SS Farms Australia Pty Ltd, an Australian Company ("SS Farms");

o.  SSR Trust, a US trust named the Scott Salyer Revocable Trust of which Salyer's family are the beneficiaries;

p.  United States Bankruptcy Court Order authorising Bankruptcy Rule 2004 examination of Collins and Associates and production of documents dated 15 April 2010 ("Order for 2004 Exam"); and

q.  $ is a reference to USD or US dollars unless otherwise stated.

12.  The individuals and their role or position involved in the events deposed include the following:

a.  Wayne Boos US tax advisers with the firm Wayne Boos & Associates engaged by the Salyer group ("Boos");



- 5 -

    b.   Cary S. Collins ("Collins"), a California accountant retained by Salyer in about May 2009;

    c.   Nick Frankish (CFO, Cedenco Group) ("Frankish");

    d.   Harry Heath (an Australian director of SKFA) ("Heath");

    e.   Richard Lawrence (CEO of the Cedenco Group)("Lawrence");

    f.   Mark McCormick (executive Vice President and Treasurer of SK Foods) ("McCormick");

    g.   Dan Nutley (an accountant at Moss Adams) ("Nutley");

    h.   Gary Perry (US lawyer for SK Foods) ("Perry");

    i.   Scott Salyer, President of SK Foods L.P ("Salyer").

## Chapter II: Overview

*SKFA's shares*

13.   SK Foods was at all material times prior to my appointment as trustee-in-bankruptcy recorded in SKFA's share register as the legal and beneficial owner of 100 shares issued by SKFA.

14.   After my appointment, during July 2009, various share transfer forms and other documents were signed purportedly transferring those 100 shares to SKPM (as to 55.45%) and SSR Trust (as to 45.55%) "*effective 1 November 2006*". Both SKPM and SSR trust are entities ultimately controlled by Salyer, against whom serious criminal charges are pending, arising from his activities as President of the SK Foods Group in the United States.

15.   I will, in due course, present substantial documentary and testimonial evidence concerning the elaborate steps taken by Salyer to flee the US, remit millions of dollars overseas to Swiss bank accounts and "strip" SK Foods not only of the SKFA shares, but also of substantial inter-company debts owed to SK Foods by SKFA, the intent being to remove those assets from reach of SK Foods' creditors. In these endeavours, Salyer was assisted by Collins. I set out some of the material concerning Salyer and Collins' activities below.

16.   There had been an earlier attempt to transfer SKFA's shares from SK Foods to SKPM and SSR Trust. In January 2008 SK Foods' audited accounts for the year ended 30 June 2007 were published. Those accounts contain a statement that the SKFA shares were purportedly distributed in specie to the SK Foods partners "*effective 1 November 2006*". SK Foods did not itself receive



- 6 -

any payment or other consideration for that alleged in specie distribution of the SKFA shares. It is alleged that the partners' capital accounts were debited by an amount considered to be the carrying value of the SKFA shares ($4.8m) but under US law SK Foods was at all material times insolvent and, as such, it had no "capital" capable of returning to its partners, whether by way of in specie distribution or otherwise.

17. In any event, no documentation (such as share transfers) was created to effect or bring about any transfer until about April 2008 and the earliest record of such documentation having been signed is in late October 2008.

18. Meanwhile, the SKFA share register showing SK Foods as the owner of the 100 shares did not change.

19. At some point in time presently unknown to me documents were created purportedly recording a transfer of the 100 SKFA shares from SKPM and the SSR Trust to Monterey. Monterey is an entity controlled by Salyer. Those documents are dated 17 January 2009. I have not seen any communication between Monterey and SKFA by which SKFA is informed that Monterey has become the holder of 100 of the 101 shares issued by SKFA.

20. In addition, at some point in time presently unknown to me documents were created purportedly recording a transfer of the 100 SKFA shares from Monterey to Fast Falcon. Fast Falcon is another entity controlled by Salyer. Those documents are dated 29 June 2009. Again, I have not seen any communication between Fast Falcon and SKFA by which SKFA is informed that Fast Falcon has become the holder of 100 of the 101 shares issued by SKFA.

21. Neither Monterey nor Fast Falcon has to date lodged any proof of debt with the liquidators claiming to be the equitable or legal owner of the 100 SKFA shares. I do not know whether either persists with any claim to be the equitable or legal owner of the 100 SKFA shares.

*Intercompany receivable*

22. At the same time as the 100 SKFA shares were purportedly distributed in specie to SK Foods partners, there was also purportedly assigned to SSR Trust a debt of over $18m owing to SK Foods by SKFA.



-7-

23.   I have not seen any document by which SSR Trust or SK Foods gives SKFA any notice of any such assignment.

24.   The liquidators have partially admitted SK Foods' proof of debt for the intercompany receivable and have set off from the admitted debt an amount of approximately $8.7m (said to be a contra debt owing by SK Foods to CJV), resulting in a net admitted debt owing to SK Foods of approximately $9.13m.  SK Foods has appealed the liquidators' decision to set off the alleged contra debt of $8.7m (proceedings 2334 of 2011).

25.   SSR Trust and "*SSR Trust and/or Fast Falcon*" have lodged separate proofs of debt claiming to be owed the intercompany debt.  The liquidators have rejected their proofs of debt.  SSR Trust and Fast Falcon have appealed the liquidators' decision to reject their proofs of debt and instead partially admit SK Foods' proof of debt for the intercompany receivable (Proceedings 2280 of 2011- "Salyer Appeal").

26.   The liquidators have now indicated, after taking nearly 2 years to reach a determination that they are presently considering further evidence and taking advice on whether it is appropriate to revoke their adjudications with respect to the intercompany debt.  At tab **3** is a true copy of DMAW lawyers' letter of 15 February 2012.

27.   The Salyer Appeal came before the Court for the first time on 17 February 2012. The Liquidators sought an adjournment of three weeks to decide whether to revoke their former decisions to partially admit SK Foods proof of debt.  The Court granted the adjournment and ordered the liquidators to serve an affidavit setting out the basis of their decision or revised decision by 20 March 2012.



- 8 -

*Liquidators' investigations and enquiries*

28.   The liquidators have undertaken what I believe are excessive and unnecessary investigations and enquiries concerning the issue of SKFA shareholders and the inter-company receivable.  Those enquiries have included multiple visits to the United States, contested court proceedings in the US concerning production of documents, depositions of several individuals and public examinations in Australia, including contested proceedings concerning production of documents in Australia.

29.   My main concerns are that despite these extensive investigations:

   a.   little, if anything, new or relevant has come to light beyond the material already available;

   b.   it is not the liquidators' role to decide contested legal issues such as are involved in the disputes over SKFA's shares and the inter-company receivable; and

   c.   whatever the liquidators decide will invariably be challenged by the aggrieved party.

30.   I am also concerned that the liquidators have, without any mandate or approval from creditors or the Court, taken it upon themselves to carry out extensive investigations concerning the existence of some cause of action against the Cedenco Group's former banker (ANZ National).  If the Court upholds SK Foods' claim to be the owner of the 100 SKFA shares and a creditor in respect of the inter-company receivable, then SK Foods will be entitled to receive effectively the whole of the funds available for distribution.  SK Foods does not wish those funds to be diminished or further diminished by any further fees and charges incurred by the liquidators continuing investigations.  SK Foods would prefer the liquidations to be concluded and for the surplus to be remitted to SK Foods so as to permit me to on-distribute those funds to SK Foods creditors, who have now been waiting for over two years for SK Foods to receive any funds from the Australian liquidations.

31.   The receivers of CJV and SS Farms have paid out the secured debt owed to ANZ National and retain over $12m.  According to the liquidators report to creditors of 5 December 2011, one of the reasons the receivers refuse to retire and hand over the surplus funds to the liquidators is because of a *"..perceived prospect of the liquidators bringing proceedings against their appointor* [ANZ National].*"*



- 9 -

32.    Not only are the liquidators continued investigations into some presently unknown cause of action
       against ANZ National causing the administration to bear further fees and charges, but it has also
       had the consequence of substantial funds being withheld by the receivers.

*Liquidators' remuneration*

33.    As an insolvency practitioner I accept that the liquidation of the Cedenco Group is in some
       respects complicated and I accept that the liquidators have a rightful entitlement to be properly
       remunerated for their efforts. But I am, nonetheless, troubled by the magnitude of fees and
       charges borne by the administrations to date. I am concerned that substantial amounts of fees and
       charges have been incurred in what I believe are unnecessary and unwarranted investigations and
       enquiries concerning issues that should have been presented to the Court for judicial determination
       by the liquidators, particularly as it should have been obvious some time ago that whatever
       decision the liquidators might come to concerning SKFA shareholding and the inter-company
       receivable would end up before the Court for determination in any event.

34.    The liquidators' remuneration (not including expenses and legal fees) are currently more than
       AUD$150,000 per month. As at 31 January 2012 the liquidators have charged AUD$2.57m in
       remuneration, have paid legal fees of over AUD$1.6m and billed travel expenses of
       approximately AUD$200,000. Both liquidators are charging AUD$700 per hour, plus GST.
       These amounts are in addition to remuneration of over AUD$400,000 paid to the liquidators
       previously, in their capacity as voluntary administrators of SKFA/CJV.

*Allocation of proceeds of sale between SKFA/CJV and SS Farms*

35.    On or about 30 July 2010 the receivers of SKFA, CJV and SS Farms completed a sale of their
       combined assets to Kagome Co. Ltd for a total of $91m. The interdependent offers apportioned
       the proceeds so that $72.8m was referable to CJV's assets and $18.2m referable to SS Farms
       assets.



- 10 -

36.    As far as I can ascertain, that apportionment of the total proceeds of sale was arbitrary or in any event not based upon the respective underlying values of CJV and SS Farms' assets.

37.    In due course substantial funds will come into the hands of the liquidators being the proceeds of sale allocated to SS Farms assets. SK Foods is not a creditor or shareholder of SS Farms.

38.    I am concerned that the liquidators appear to accept at face value the apportionment of the sale proceeds as determined by the receivers and Kagome Co Ltd. I am concerned that no independent analysis has been undertaken to confirm whether the allocation of sale proceeds should be adjusted to reflect the actual underlying values of the respective assets of CJV and SS Farms. On the information available, I am concerned the current allocation of the sale proceeds substantially overstates the underlying value of the assets sold by SS Farms and that most of the proceeds allocated to SS Farms ought to form part of the estate of CJV.

**Chapter II: Historical background to my appointment**

39.    Commencing from about August 2005 the SK Foods Group operating in the United States was subject to a criminal investigation conducted by the Federal Bureau of Investigation, the Internal Revenue Services Criminal Investigations Division, the Office of Inspector General, Food and Drug Administration and the Department of Justice, Antitrust Division ("*Criminal Investigation*"). Under **tab 4** is an affidavit Special F.B.I Agent Paul S. Artley sworn 5 January 2010 ("*Artley affidavit*"). I refer to paragraphs 4 and 7.

40.    I also refer to paragraphs 11 and 12 of the Artley affidavit. The subject of the Criminal Investigation included Salyer's participation in and direction of others with respect to:

a.    the payment of bribes by SK Foods employees or agents to the purchasing officers of SK Foods' customers, to ensure those customers purchased processed tomato products from SK Foods rather than its competitors and that such purchases were at elevated, above market prices;

- 11 -

b.  the payment of bribes by SK Foods employees or agents to officers of SK Foods' customers to obtain confidential information about competitors' bids or tenders;

c.  the widespread selling and shipping of tomato products that did not meet contractual specifications and/or were adulterated with mould at a level exceeding limits prescribed by the United States Food and Drug Administration; and

a.  the falsification of both internal and customer-bound documentation to disguise the mould levels to comply with FDA limits and/or make the product appear as if it were contractually compliant.

41.     The Criminal Investigation of Salyer and SK Foods Group became overt on 16 April 2008, when the FBI, the IRS and FDA executed numerous judicially authorised search warrants in the States of California and New Jersey (Artley affidavit, paragraph 23).

42.     I refer to paragraphs 14 and 15 of the Artley affidavit.  Between 2004 and April 2008, Randall Lee Rahal ("*Rahal*") was a director of SK Foods.  On 16 December 2008, Rahal pleaded guilty to charges of:

a.  Racketeering;

b.  Money laundering; and

c.  Price fixing

43.     In Rahal's publicly filed plea agreement with the US prosecutorial authorities, Rahal admitted that he routinely paid bribes to the purchasing officers of SK Foods' customers (Artley affidavit, paragraph 44).  Rahal also admitted to participating in a conspiracy with the leaders, associates, and employees of SK Foods to engage in a pattern of racketeering activity, and that pursuant thereto, he routinely paid bribes to the purchasing officers of SK Foods' customers.   The relevant reference is on page 22 of the Rahal plea agreement.  Under **tab 5** is a copy of Rahal's plea agreement.

- 12 -

44.     As at April 2008, James Richard Wahl Jnr ("*Wahl*") was employed by Frito-Lay Inc as Senior

        Group Manager for Ingredients Purchasing (Artley affidavit  paragraph 16). On 18 February

        2009, Wahl pleaded guilty to mail fraud in connection with his dealings with SK Foods.


45.     As at April 2008, Robert Watson ("*Watson*") was employed by Kraft Foods Inc as a

        Purchasing Manager (Artley affidavit , paragraph 19). On 27 January 2009, Watson pleaded

        guilty to mail fraud in connection with his dealings with SK Foods.


46.     As at April 2008, Jennifer Lou Dahlman ("*Dahlman*") was employed by SK Foods as a

        Reports and Business Analyst (Artley affidavit, paragraph 21). On 18 February 2009,

        Dahlman pleaded guilty of introducing adulterated and misbranded food into interstate

        commerce with the intent to defraud and mislead.


47.     As at April 2008 Robert Turner ("*Turner*") served as a Corporate Purchasing Manager for

        B&G Foods Inc. (Artley affidavit, paragraph 20). On 5 May 2009, Turner pleaded guilty to

        mail fraud in connection with his dealings with SK Foods.


48.     As mentioned above, on 14 May 2009, I was appointed as Trustee-in-Bankruptcy of SK

        Foods and RHM Industrial/ Specialty Foods Inc.


*May 2009: Salyer appoints Collins as personal adviser*

49.     At about the same time as I was appointed as Trustee, Salyer retainer Collins as his personal

        adviser. Collins is an accountant ordinarily resident in California and trades under the name of

        "Collins & Associates." Collins is also a convicted felon. In 2001, Collins pleaded guilty in the

        United States District Court for the Northern District of California to be the crime of making

        false statements on a loan application submitted to a federally insured banking institution. A

        copy of Collin's Criminal Docket is under **tab 6**. Collins was sentenced to prison for one day,

        followed by a three year period of supervised release, and was ordered to pay a fine of

        $10,000.00.

- 13 -

50.  Collins has described his relationship with Salyer in declarations made by him on 14 May 2010 and 18 August 2010, both of which were tendered into evidence before the United States Bankruptcy Court. A copy of Collins declaration of 14 May 2010 is under **tab 7**. (I refer to paragraph 3). A copy of Collins declaration of 18 August 2010 is under **tab 8**.

*May – June 2009: Elaborate Corporate Structure created to defeat creditors' claims*

51.  By the end of June 2009 Collins has established an elaborate international corporate structure of which Salyer or members of his immediate family were (or were to be) the beneficiaries and ultimate controllers (*"new corporate structure"*). Under **tab 9** is a corporate diagram of the new corporate structure prepared by Collins & Associates.

52.  The new corporate structure comprised:

    a.  the incorporation Fast Falcon, a limited liability company incorporated in Nevis, West Indies;

    b.  the purported transfer of all the shares in both the Australian and New Zealand Cedenco Group (including the 100 shares in SKFA) so as to position Fast Falcon as the immediate holding company for the Australian and New Zealand Cedenco Group, and

    c.  the appointment of Asia Trust Limited, a company incorporated in the Cook Islands, as trustee of a trust known as "The Hawker Sydley Trust", being a "Cook Islands Trust", as the ultimate beneficial owner of Fast Falcon.

- 14 -

*Late June/early July 2009- purported assignment of the Intercompany Receivable to Fast Falcon*

53.   On or about 29 June 2009, being after my appointment as Trustee,  the intercompany receivable of approximately $18m owing by SKFA to SK Foods was purportedly assigned to Fast Falcon. Under **tab 10** is a copy of a proof of debt lodged signed by Collins on behalf of Fast Falcon dated 27 March 2011. That proof of debt has been wholly rejected by the liquidators.

*July – September 2009: Shifting millions to Fast Falcon overseas bank accounts*

54.   Having established the new corporate structure, in July 2009 Collins assisted Salyer in establishing bank accounts for Fast Falcon with Valartis Bank AG, Zurich and with Volksbank AG. Under **tab 11** are emails between Collins and Rene Hermann, Head of Private Banking, Valartis Bank AG during June and July 2009 and between Collins and Salyer during the same period.

55.   On Thursday 16 July 2009 or Friday 17 July 2009 (Swiss time), Collins and Salyer met with Rene Hermann, Head of Private Banking, Valartis Bank AG in Zurich for the purpose, or for purposes including, the opening of a Swiss bank account in the name of Fast Falcon. At the same time, Collins secured *"a secondary bank contact with Volksbank in Switzerland"*. Under **tab 11** is a copy email from Collins to Salyer dated 16 July 2009.

56.   During July 2009 Collins also established a bank account for Fast Falcon with Volksbank AG, in Lichtenstein. Under **tab 11** is an email from Collins to Salyer dated 16 July 2009.

- 15 -

*June – July 2009: unauthorised preparation and filing of tax returns for SK Foods LP*

57.   During June and July 2009 Collins set about preparing and then filing the 2008 Federal and State tax returns for SK Foods and RHM Industrial/ Specialty Foods Inc. I did not request or retain Collins to prepare or file the 2008 Federal and State tax returns for SK Foods and RHM Industrial/ Specialty Foods Inc. As Trustee-in-Bankruptcy of SK Foods and RHM Industrial/ Specialty Foods Inc., only I have authority to file the 2008 Federal and State tax returns for SK Foods and RHM Industrial/ Specialty Foods Inc.

58.   Under tab **12** is a record of interview from Special Agent Artley dated 5 March 2010. During August 2009 the Inland Revenue Service issued tax refunds cheques payable to Salyer for USD$2,243,684 and $USD$955,900 ("*Tax Refund Cheques*"). During August 2009 Collins deposited the Tax Refund Cheques into a bank account operated by Collins with Mechanics Bank, styled "*Collins and Associates LLP*". On 9 September 2009 Collins opened a new bank account with Mechanics Bank, styled "*Cary S. Collins dba Collins and Associates*" ("*Collins Trust Account*"). On the day the Collins Trust Account was opened, Collins caused to be transferred into it the proceeds of the Tax Refund Cheques and other funds previously received from or for the benefit of Salyer.

59.   During September 2009 Collins caused to be transferred amounts exceeding USD$3m from the Collins Trust Account to the Fast Falcon account with Volksbank AG, in Lichtenstein. I refer to the record of interview prepared by Special Agent Paul S. Artley of the Federal Bureau of Investigation on 5 March 2010 (tab **12**).

60.   According to a Portfolio Valuation submitted to Mr. Salyer, Fast Falcon, LLC had $4,382,077 in assets as of 31 December 2009, which includes $3,838,000 at Volksbank AG (tab **13**).

61.   Fast Falcon appointed Collins as its designated agent and representative to file claims on Fast Falcon's behalf in the Australian liquidation. I refer to the proof of debt filed by Cary Collins on behalf of Fast Falcon in the Australian liquidation proceedings, a copy of which commence at **tab 10**.



- 16 -

62. The contact address Fast Falcon used on its proof of debt filed with the Liquidators is the same address as Cary Collins' residence and business address, 3450 21st Street, San Francisco, California 94110.

63. US Attorneys for Salyer have, however, deposed to Fast Falcon having purported to terminate Collins as its Manager "effective as of 16 May 2011". The chopping and changing of Managers authorised to accept service on behalf of Fast Falcon has led His Honour Justice Bardwill of the US Bankruptcy Court to observe:

> "... *Fast Falcon has demonstrated a degree of gamesmanship, as far as who it is the Trustee has to serve to gain jurisdiction over Fast Falcon.*" (Findings of Fact and Conclusions of Law re Preliminary Injunction, paragraph [102], page 34, copy commencing at **tab 14**).

64. Salyer was arrested at John F. Kennedy Airport on 4 February 2010 pursuant to a twenty-count Criminal Complaint asserting violations of the RICO Act, obstruction of justice, commercial bribery, and other alleged crimes.

65. A copy of the Superseding Indictment against Salyer commences at **tab 15**.

66. Salyer is currently awaiting trial in the U.S. under house arrest. His criminal trial is currently set for April 17, 2012.

67. In the course of my administration I have had continuing concerns regarding Salyer's ongoing attempts to illegally transfer funds and property including the shares in SKFA which belong to my estate. In September 2011 I applied for and obtained a Preliminary Injunction from the US Bankruptcy Court to restrain Salyer and those acting in concert with him including the Fifth Defendant, the Sixth Defendant, the Seventh Defendant and the Eighth Defendant from transferring or otherwise dissipating any funds or property they might receive from the Australian liquidation. Commencing at **tab 16** is a copy of that Order.

- 17 -

**Chapter IV: Purported dealings with SKFA's shares and Inter-Company receivable**

68. In January 2002, SKFA allotted 100 fully paid shares to SK Foods. Under **tab 17** is a copy of the share register for SKFA (which, until recently, was the only known version of the share register).

69. On 30 June 2004, SKFA appears to have allotted 1fully paid shares to Salyer. Under **tab 18** is a copy of the ASIC form 484.

*Attempts to transfer SKFA share pre-bankruptcy*

70. In 2007, the U.S. accounting firm of Moss Adams was engaged to prepare audited financial statements for SK Foods financial years ending October 31, 2006, and June 30, 2007. SK Foods changed the end of its fiscal year from October 31 to June 30 during this period.

71. During the course of the audits, Moss Adams informed SK Foods that *inter alia* because SK Foods held the SKFA shares, U.S. accounting standards required that SKFA's financials be consolidated with those of SK Foods (referred to hereafter as the "FIN 46" issue). This created a burdensome accounting task as SKFA's year end differed from SK Foods and SKFA's financial statements were audited under Australian accounting standards which required a conversion to U.S. accounting standards prior to consolidation.

72. To avoid the time and cost of the accounting requirements, Salyer, Dan Nutley of Moss Adams McCormick, Perry, Boos and others tried to devise a strategy for eliminating these assets from SK Foods's financial statements while still complying with U. S. accounting standards. However, they did not want to create a taxable event, *See* e-mails between Boos and Salyer dated August 29, 2007, commencing at **tab 19** nor did they want to show a decrease in SK Foods equity on the balance sheets. *See* e-mail from Salyer to Nutley and McCormick dated September 13, 2007 and dated September 14, 2007 commencing at **tab 20**.

73. The debate on how to manipulate the corporate structure to accomplish this goal continued from July 2007 through at least December 2007. Included in the debate was whether to make any transfers "effective" November 1, 2006 or June 30, 2007. *See* email dated September 20, 2007 commencing at **tab 21**. Having not resolved how to effectuate the transactions, Boos, SK Foods' tax accountant, filed tax returns on or about September 15, 2007 for SK Foods which reflect that no transfer of the SKFA shares had occurred.



- 18 -

74. In August 2007, Perry provided documents purporting to transfer the shares in SKFA. Boos instructed Salyer to destroy those drafts as the transaction as structured created a tax liability. See emails dated August 29, 2007 commencing at **tab 22**. It appears through e-mails exchanged between SK Foods and its outside advisors that they continued to debate how to accomplish the divestiture without any apparent resolution through October 2007. See emails dated September 20, 2007 commencing at **tab 21**.

75. Nevertheless, on January 15, 2008, Moss Adams issued its audit for the period ending June 30, 2007 reflecting a transfer of the SKFA shares "effective" November 1, 2006. See a copy of these audited financial statements commencing at **tab 23**.

76. Recent U.S Bankruptcy Rule 2004 examination testimony given by Dan Nutley of Moss Adams confirms that it did so, however, based solely upon the management representation letter, discussions with management and adjusted journal entries. Moss Adams never received or sighted any legal documents purportedly effectuating the transfers. See copy of examination testimony of Dean Nutley commencing at **tab 24**.

77. Similarly, SK Foods's subsequent auditors, Stoughton Davidson, or tax advisor, Boos, never reviewed or ever even found any underlying legal documents evidencing these purported transactions. See copy of examination testimony of Wayne Boos commencing at **tab 25**. The accounts were subsequently withdrawn and this audit is not to be relied on. See copy of the deposition of Scott Dye, page 34, line 15-page 35, line 19 at **tab 26**.

78. The June 30, 2007 audited financial statements which were not issued until January 2008 reflected a purported reduction in owner's equity by approximately $4.8 million. No cash or other property was transferred to SK Foods at any time in exchange for the SKFA shares.

79. On March 28, 2008, Perry emailed to an SK Foods' employee, Lisa Crist, what appear to be execution copies of documents intended to evidence a transfer of the Cedenco Stock ("2008 Transfer Documents") commencing at **tab 27** are copies of these documents.

80.

- 19 -

81.    Ms. Crist left two days later to attend conferences in Australia and New Zealand. *See* emails dated March 28, 2008 commencing at **tab 28**. Although Salyer was present in Australia and New Zealand at the same time, Ms. Crist testified that she did not have Salyer sign any documents during the trip. See copy of examination testimony of Ms Crist commencing at **tab 29**. Salyer's itinerary indicates he was scheduled to arrive back to Monterey on Friday, April 11, 2008. *See* email dated March 24, 2008 at **tab 30**.

82.    On October 27, 2008, Jeanne Johnston who is the vice president of Business Development for SK Foods sent an email to McCormick attaching signed copies of the 2008 Transfer Documents. A copy of this email commences at **tab 31**. This is the earliest record of signed copies of any 2008 Transfer Documents. Although they could have been executed anytime between April 12, 2008 and October 27, 2008, for purposes of this application I assume that if a transfer of the Cedenco Stock occurred, it occurred at the earliest of these possible dates. This is at a time when SK Foods was insolvent and any alleged consideration by way of a reduction in the capital account (if this occurred at all) would be entirely illusory. Such a transaction is in any event voidable under US law.

*Attempts to transfer SKFA Shares post-bankruptcy*

83.    After my appointment as trustee to SK Foods on or about 10 July 2009, a director of SKFA filed a return with ASIC purporting to record a transfer of shares by SK Foods to the Fifth Defendant and the Sixth Defendant. At **tab 32** is a copy of the ASIC form dated 10 July 2009. The purported transfers are said to have been made on 1 November 2006, some 30 months before the ASIC form was lodged.

84.    Documents obtained by me recently show the share transfers were executed by Salyer purportedly on behalf of SK Foods in July 2009, when Salyer visited New Zealand. At **tab 33** are:

   i.   an email from Deloittes to Harry Heath (an Australian director of SKFA) dated 16 July 2009 and Nick Frankish (CFO SKFA); and

   ii.  an email from Mr Frankish dated 20 July 2009 onforwarding the share transfer forms to Richard Lawrence (CEO, SKFA) "...*for you, Scott and Harry to sign*".



- 20 -

85.   At tab 34 is a copy of the certain share transfer forms that have recently been obtained by me ("2009 Transfer Documents"). It is to be noted that the cash consideration of AUD$2,855,502.45 AUD and $3,490,058.55 AUD are shown in the consideration panel of these forms as having being paid. Such cash payments were never in fact paid. SK Foods has no record of receiving any such sums or any amount as consideration.

86.   As at July 2009 Salyer had no authority whatsoever from SK Foods to sign the share transfers on behalf of SK Foods, because following my appointment as trustee his authority was "completely ousted" pursuant to the US Bankruptcy Code, 11 U.S.C. § 101, et. seq.: *Commodity Futures Trading Commission v Weintraub, 471 U.S 343, 352, (1985).*

87.   Any transfer of an asset of SK Foods post my appointment without my consent or U.S Bankruptcy Court approval is void under US Bankruptcy law, including, without limitation under, sections 362, 363 and 549 of the US Bankruptcy Code, as well as under California State law.

88.   I am informed by Kevin Coleman of Schnader Harrison Segal & Lewis LLP (which firm are my US attorneys) and believe that my appointment had the following effect:

   b.   it vested all management authority in me, displacing any authority held by the SK Foods., L.P's prior management, including Salyer;

   c.   the provisions of the United States Bankruptcy Code require that any transfer of a debtor's assets outside the ordinary course of a debtor's business be approved by the U.S Bankruptcy Court; and

   d.   the US Bankruptcy Code imposes a stay automatically upon the filing of a bankruptcy case against all entities preventing them from taking any action to exercise control over property of the debtor or the debtor's estate, and that any action taken in violation of the stay is void under US law, not merely voidable. 11 U.S.C. § 362; In re Schwartz, 954 F.2d 569 (9th Cir. 1992).

89.   It is therefore clear that under US law, the 2009 Transfer Documents are void and could not effect either any legal or equitable transfer of SK Foods's interests in the SKFA.



- 21 -

*Competing Proofs of Debt*

90.  Each of SK Foods, SKPM and Salyer as trustee of the SSR Trust have lodged proofs of debt with the liquidators claiming to be the owner of those 100 SKFA shares set out above. At tab 35 is a copy of the proof of debt of SK Foods.

91.  A copy of the 'ASIC Historical Company Extract dated February 16, 2012 of SKFA is at tab 36.

*Alleged transfer of SKFA shares from Salyer interests to Monterey and then to Fast Falcon*

92.  On 17 January 2009, SKPM purported to sell all of its shares in SKFA to Monterey.  On the same date, Salyer as trustee of the SSR Trust purported to sell all of its shares in SKFA to Monterey.  Copies of the Bills of Sale appear at tab 37.

93.  On 29 June 2009, Monterey purported to sell all of its interest in SKFA (being 100% of the issued share capital) to Fast Falcon.  A copy of the Bill of Sale appears at tab 38.

94.  Neither of the Bills of Sale constitutes proper legal share transfer forms, and do not transfer the legal ownership of the SKFA shares to Monterey nor to Fast Falcon.  Insofar as any equitable transfer is concerned, the transfers are of no effect as the transferors did not have any valid right, title or interest in the shares for the reasons previously stated.

95.  Moreover, the share transfers to Monterey and to Fast Falcon were part an elaborate scheme by the Fifth Defendant, the Sixth Defendant, the Seventh Defendant and the Eighth Defendant with the assistance of Collins, to defraud creditors and to move the assets of SK Foods, L.P outside the jurisdiction as outlined.

96.  My solicitors have been informed by the liquidators' solicitors that neither Monterey nor Fast Falcon have to date lodged any proof of debt claiming to have any interest in any of SKFA's shares.

**Chapter V: Australian Liquidators investigations and enquiries**

97.  SK Foods claim to be the legal and beneficial owner of 100 fully paid shares in SKFA has not been accepted by the liquidators because they continue to claim there is conflicting evidence as to the ownership of SKFA's share capital.



- 22 -

98.    The liquidators have stated for nearly 2 years and continue to state they are presently investigating the possibility that the shares originally held by SK Foods were transferred to entities related to Salyer on or with effect from 1 November 2006.

99.    To date the liquidators have taken over a dozen examinations/depositions and subpoenaed hundreds of thousands of pages of documents over the past 20 months.

100.   The liquidators have to date and unless restrained will continue to incur substantial costs and expenses investigating issues concerning who owns the 100 SKFA shares. It is unclear what power or obligation the liquidators have to make any determination or ruling on the issue of who owns the disputed 100 SKFA's shares.

101.   The liquidators' ultimate decision concerning the legal and beneficial ownership of the 100 SKFA shares will, in any event, almost certainly be the subject of an appeal by the aggrieved parties, as has occurred with the liquidators' determination regarding the ownership of an approximately $18 million inter-company loan owed by SKFA which is now the subject of separate appeal proceedings in this Court.

**Chapter VI: Australian Liquidators remuneration and fees**

102.   Under **tab 39** is a report to creditors dated 5 December 2011 and a report to creditors dated 17 February 2012.

103.   The liquidators' remuneration (not including expenses and legal fees) are currently about AUD$150,000 per month.  As at 31 January 2012 the liquidators have charged AUD$2.57m in remuneration, have paid legal fees of over AUD$1.6m and billed travel expenses of over AUD$197,000.  Both liquidators are charging AUD$700 per hour, plus GST.  These amounts are in addition to remuneration of over AUD$400,000 paid to the liquidators previously, in their capacity as voluntary administrators of SKFA/CJV.

**Chapter VII: Proper allocation of proceeds of sale as between SKFA/CJV and SS Farms**

104.   I refer to the report to creditors dated 5 December 2011 at **tab 39**.

105.   In their capacity as liquidators of SS Farms, the liquidators hold or stand to receive from the receivers of SS Farms, approximately $18.2m.



- 23 -

106. In due course, the liquidators of SS Farms will distribute a substantial surplus to SS Farm's shareholder, being SS Farms LLC.

107. SK Foods claims that most of those surplus funds held by the liquidators of SS Farms are, in truth, proceeds of sale of CJV and SKFA's assets and, as such, form part of the assets of CJV/SKFA.

108. I respectfully submit that it would be just and beneficial for the Court to determine the issue of the rightful owner of the 100 SKFA shares and the issue of the proper allocation of the proceeds of sale of the combined assets of CJV/SKFA and SS Farms.

Signature of Bradley D. Sharp

State of California

County of Los Angeles

Subscribed and sworn to me (or affirmed) before me on this 17th day of February, 2012, by Bradley D. Sharp, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature of notary: _Jennifer Warner_

Name and Qualification of witness: Jennifer Warner, Notary Public

JENNIFER WARNER
Commission # 1953292
Notary Public - California
Los Angeles County
My Comm. Expires Sep 22, 2015

- 24 -

Schedule

No.           of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735

**First Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010

**Second Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716

**Third Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

John Sheahan and Ian Russell Lock as joint and several liquidators of

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716

**Fourth Defendants**

C/- Sheahan Lock Partners, Accountants

Level 8, 26 Flinders Street, Adelaide South Australia



- 25 -

SK PM Corporation, a California corporation

**Fifth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Frederick Scott Salyer (aka Scott Salyer) a California resident,

as trustee of the Scott Salyer Revocable Trust

**Sixth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Monterey Peninsula Farming LLC, a California Corporation

**Seventh Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Fast Falcon LLC, a company organised under the laws of Nevis, West Indies

**Eighth Defendant**

c/- Collins & Associates, 3450, 21st Street, San Francisco, California 94110

United States of America


SS Farms LLC

a California Corporation

**Ninth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America



## Exhibit Certificate – "BS 1"

## Folder 1 of 2

No. NSD          of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List

**SK Foods LP, a California limited partnership (Under Chapter 11)**
**First Plaintiff**

**Bradley D. Sharp, as trustee in bankruptcy of SK Foods LP (Under Chapter 11)**
**Second Plaintiff**

**SK Foods Australia Pty Ltd (in liquidation)**
**A.C.N 009 245 735**
**First Defendant**
**And nine others**

This is folder 1 of 2 of the exhibit marked "BS-1" referred to in the affidavit of Bradley D. Sharp affirmed before me on 17ᵗʰ February 2012.

_____
Bradley D Sharp

State of California

County of Los Angeles

Subscribed and sworn to me (or affirmed) before me on this 17ᵗʰ day of February, 2012, by Bradley D.

Sharp, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature of notary: _Jennifer Warner_

Name and Qualification of witness: Jennifer Warner, Notary Public

```
JENNIFER WARNER
Commission # 1953292
Notary Public - California
Los Angeles County
My Comm. Expires Sep 22, 2015
```

| | |
|---|---|
| Filed on behalf of (name & role of party) | First and Second Plaintiff |
| Prepared by (name of person/lawyer) | Jill Milburn, Partner |
| Law firm (if applicable) | Duncan Cotterill |
| Tel   (02) 8267 3800 | Fax   (02) 8267 3808 |
| Email   j.milburn@duncancotterill.com | |
| Address for service (include state and postcode) | Level 18, 39 Martin Place Sydney NSW 2000 |

[Form approved 01/08/2011]

- 2 -

## Exhibit Certificate – "BS 1"

## Folder 2 of 2

No. NSD                    of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List

**SK Foods LP, a California limited partnership (Under Chapter 11)**
First Plaintiff

**Bradley D. Sharp, as trustee in bankruptcy of SK Foods LP (Under Chapter 11)**
Second Plaintiff

**SK Foods Australia Pty Ltd (in liquidation)**
**A.C.N 009 245 735**
First Defendant
And nine others

This is folder 2 of 2 of the exhibit marked "BS-1" referred to in the affidavit of Bradley D. Sharp affirmed before me on 17th February 2012.

Bradley D Sharp

State of California

County of Los Angeles

Subscribed and sworn to me (or affirmed) before me on this 17th day of February, 2012, by Bradley D.

Sharp, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature of notary: _Jennifer Warner_

Name and Qualification of witness: Jennifer Warner, Notary Public

JENNIFER WARNER
Commission # 1953292
Notary Public - California
Los Angeles County
My Comm. Expires Sep 22, 2015

| | |
|---|---|
| Filed on behalf of (name & role of party) | First and Second Plaintiff |
| Prepared by (name of person/lawyer) | Jill Milburn, Partner |
| Law firm (if applicable) | Duncan Cotterill |
| Tel   (02) 8267 3800 | Fax   (02) 8267 3808 |
| Email   j.milburn@duncancotterill.com | |
| Address for service (include state and postcode) | Level 18, 39 Martin Place Sydney NSW 2000 |

[Form approved 01/08/2011]

| DRAFT | No. NSD 262 of 2012 |

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List


SK Foods LP, a California limited partnership (Under Chapter 11)

**First Plaintiff**

Bradley D Sharp, as trustee in bankruptcy of SK Foods LP (Under Chapter 11)

**Second Plaintiff**

SK Foods Australia Pty Ltd (in liquidation)

ACN 009 245 735

**First Defendant**

**And nine others named in the Schedule**


**ORDER**

| **JUDGE:** | Emmett J |
| **DATE OF ORDER:** | 4 April 2012 |
| **WHERE MADE:** | Sydney |


**THE COURT:**

1.    **ORDERS** that the Interlocutory Process filed on 20 March 2012 by the fifth to ninth defendants (**the Summary Judgment Application**) be fixed for hearing on [        ]        April 2012.

2.    **ORDERS** that the plaintiffs file and serve by no later than 4:00 pm on [            ] 2012  any further evidence upon which they seek to rely.

3.    **ORDERS** pursuant to rule 29.11, that the Honourable Peter Heerey QC be appointed as examiner for the purposes of conducting the examination of the sixth defendant referred to in order 4 hereof.

4.   **ORDERS** that the sixth defendant, Frederick Scott Salyer, be examined on oath or affirmation in San Francisco, California, in the United States of America before the Honourable Peter Heerey QC on the matters the subject of this proceeding.

5.   **DIRECTS** pursuant to s. 8 of the *Foreign Evidence Act 1994* that the examination be completed and the deposition be sent by the examiner to the Registrar for filing pursuant to rule 29.20(5) by [        ] 2012.

6.   **ORDERS** that the defendants file and serve by no later than 4.00pm on [         ] 2012 any additional evidence upon which they seek to rely.

7.   **ORDERS** that Proceeding NSD2280 of 2011 and Proceeding NSD2334 of 2011 ("**the other proceedings**") be managed and heard together with Proceeding NSD262 of 2012, and that evidence in NSD262 of 2012 is evidence in the other proceedings.

8.   **ORDERS** that this proceeding be fixed for hearing on [          ]   2012,   before   the Honourable Justice [           ] on an estimate of [      ] days.


District Registrar

Date that entry is stamped:


Date of Order:     April  2012

**Schedule**

No.    NSD 262 of 2012

Federal Court of Australia

District Registry: New South Wales

Division: Corporations List

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735

**First Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010

**Second Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716

**Third Defendant**

C/- Sheahan Lock Partners, Accountants, Level 8, 26 Flinders Street,

Adelaide South Australia

John Sheahan and Ian Russell Lock as joint and several liquidators of

SK Foods Australia Pty Ltd (in liquidation) A.C.N 009 245 735

Cedenco JV Australia Pty Ltd (in liquidation) A.C.N 075 836 010

SS Farms Australia Pty Ltd (in liquidation) A.C.N 107 746 716

**Fourth Defendants**

C/- Sheahan Lock Partners, Accountants

Level 8, 26 Flinders Street, Adelaide South Australia

SK PM Corporation, a California corporation

**Fifth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Frederick Scott Salyer (aka Scott Salyer) a California resident,

as trustee of the Scott Salyer Revocable Trust

**Sixth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Monterey Peninsula Farming LLC, a California Corporation

**Seventh Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America


Fast Falcon LLC, a company organised under the laws of Nevis, West Indies

**Eighth Defendant**

c/- Collins & Associates, 3450, 21st Street, San Francisco, California 94110

United States of America


SS Farms LLC a California Corporation

**Ninth Defendant**

c/- Farella Braun & Martel LLP

Suite 1700, 235 Montgomery Street, San Francisco California 94104

United States of America